# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **GROUPCHATTER, LLC** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:15-cv-00975-RWS** |
| | § | |
| **GENERAL ELECTRIC COMPANY,** | § | |
| **GE ENERGY MANAGEMENT** | § | |
| **SERVICES, INC., and** | § | |
| **GE GRID SOLUTIONS, LLC** | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION TO TRANSFER VENUE
## TO THE UNITED STATES DISTRICT COURT FOR THE
## <u>NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1404(a)</u>

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................. 2

  A.  Procedural History of this Case. .................................................................. 2

  B.  This Case Has Strong Connections to the Northern District of Georgia. ........................... 2

    1.  The Grid IQ AMI System ...................................................................... 2

    2.  The Patents-in-Suit ................................................................................ 4

  C.  This Case Lacks a Meaningful Connection to the Eastern District of Texas. .................... 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.  ARGUMENT ...................................................................................................... 8

  A.  GroupChatter's Claims Could Have Been Brought in the Northern District of Georgia. ... 8

  B.  The Private Interest Factors Favor Transfer to the Northern District of Georgia. ............... 9

    1.  The Relative Ease of Access to Sources of Proof Favors Transfer. ................................ 9

    2.  The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Favors Transfer. ................................................................. 11

    3.  The Cost of Attendance for Willing Witnesses Strongly Favors Transfer. ................... 11

    4.  The Other Practical Factors Are Neutral. ................................................ 12

  C.  The Public Interest Factors Favor Transfer to the Northern District of Georgia. .............. 13

    1.  The Northern District of Georgia Has a Substantial Connection to and Local Interest in Adjudicating this Case. ................................................... 13

    2.  The Administrative Difficulties Flowing From Court Congestion in the Eastern District of Texas Favors Transfer. ......................................... 14

    3.  The Remaining Public Interest Factors Do Not Bear on Transfer. ................................ 15

V.  CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blue Spike, LLC v. 3M Cogent, Inc.*,
No. 12-cv-00499, 2014 WL 10005586 (E.D. Tex. July 11, 2014) .........................................13

*DSS Tech. Management, Inc. v. Apple, Inc.*,
No. 13-cv-00919, 2014 WL 6847569 (E.D. Tex. Nov. 17, 2014)..........................................12

*Frederick v. Advanced Fin. Solutions, Inc.*,
558 F. Supp. 2d 699 (E.D. Tex. 2007) ....................................................................................7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)...................................................................................9, 11, 15

*Gonzales v. Autotrader.com, Inc.*,
No. 14-cv-00630, 2015 WL 1387858 (E.D. Tex. Mar. 25, 2015) ...........................................7

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009).............................................................................................14

*Ingeniador, LLC v. Adobe Sys. Inc.*,
No. 12-cv-00805, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) .............................................12

*In re Microsoft Corporation*,
630 F.3d 1361 (Fed. Cir. 2011)........................................................................................10, 14

*In re Morgan Stanley*,
417 F. App'x 947 (Fed. Cir. 2011) ........................................................................................15

*Network Protection Scis., LLC v. Juniper Networks, Inc.*,
No. 10-cv-00224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ..............................................8

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009)..........................................................................................8, 11

*Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*,
614 F. Supp. 2d 772 (E.D. Tex. 2009) ..................................................................................11

*Software Rights Archive, LLC v. Google, Inc.*,
No. 07-cv-00511, 2010 U.S. Dist. LEXIS 73972 (E.D. Tex. July 22, 2011) .........................14

*In re Toa Techs., Inc.*,
543 F. App'x 1006 (Fed. Cir. 2013) ..................................................................................9, 13

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014)............................................................8, 10

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)...................................................................7

*In re Verizon Bus. Network Servs. Inc.*,
   635 F.3d 559 (Fed. Cir. 2011)...................................................................13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ......................................................................7

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
   No. 10-cv-00364, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012).................9

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010)................................................................10

**Statutes**

28 U.S.C. 1400(b) ...........................................................................................7

28 U.S.C. § 1404(a) ...............................................................................1, 6, 8

28 U.S.C. § 1406(a) .........................................................................................1

Defendants, General Electric Company ("GEC"), GE Energy Management Services, LLC (formerly known as GE Energy Management Services, Inc.) ("GE Energy"), and GE Grid Solutions, LLC ("Grid Solutions") (collectively, "GE" or "Defendants"), hereby move the Court for a transfer of venue from the Eastern District of Texas to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).[1]  This Motion is supported by the Declarations of Anthony Durel ("Durel Decl.") and Peter J. Chassman ("Chassman Decl.").

## I.    INTRODUCTION

This case undeniably belongs in the Northern District of Georgia, not here.

- GE's Grid IQ AMI System ("Grid IQ"), the accused product, was developed at the U.S. headquarters of GE Energy and Grid Solutions in Atlanta, where GE's Grid IQ business is located.

- GE's expected corporate deposition representatives and key physical evidence concerning Grid IQ are located in Atlanta.

- Employees of GE's contractor, SUM Global, who assisted with developing software incorporated into Grid IQ, are located in the Atlanta area.

- The named inventors of the four Patents-in-Suit issued are located in the Atlanta area now and were at the time the patents issued.  GE expects those non-party Georgia residents to be witnesses in this case.

- The Patents-in-Suit were also originally assigned to the named inventors' employer—a company also located in the Atlanta area.

- There are no customers of GE's Grid IQ located in this District.

---

[1] GE does not waive its right to challenge venue under 28 U.S.C. § 1406(a).

- No witnesses with material relevant information concerning the infringement allegations in the Complaint are located in this District.

Plaintiff GroupChatter, LLC ("GroupChatter"), on the other hand, is believed to be a non-practicing entity formed in this District in September 2014 in an attempt to manufacture venue. And the piece of paper GroupChatter used to incorporate here is not enough to keep this case in this District, with nearly every convenience factor weighing heavily in favor of transfer, and no factor weighing against it. GE accordingly respectfully requests that the Court transfer this case to the Northern District of Georgia.

## II.   FACTUAL BACKGROUND

### A.   Procedural History of this Case.

This case is in its infancy. GroupChatter filed its Complaint against GE on November 11, 2015. [Dkt. 1 ¶¶ 16, 32, 45, 56.] GroupChatter asserts that it is the assignee of the Patents-in-Suit. [Dkt. 1 ¶¶ 9, 26, 39, 50.] The Patents-in-Suit relate to systems, apparatuses, and methods of group messaging alerting to and acknowledgment from mobile devices or devices used by emergency first responders. [Dkt. 1-1, 1-2, 1-3 & 1-4.] GroupChatter alleges that Grid IQ infringes the Patents-in-Suit. [*Id.* ¶¶ 16, 32, 45, 56.] Defendants filed this Motion the day after they filed their Answer to the Complaint. As of the filing of this Motion, the Court has not set an initial scheduling conference in this case.

### B.   This Case Has Strong Connections to the Northern District of Georgia.

#### 1.   The Grid IQ AMI System

GE Energy and Grid Solutions are organized under Delaware law and have their primary places of business in Atlanta, Georgia. [Durel Decl. ¶ 3.] GEC is incorporated under the laws of

New York and has its headquarters in Fairfield, Connecticut, and is a parent company to both GE Energy and Grid Solutions.[2]  [*Id.* ¶ 2.]

Grid IQ is a smart meter solution offering that allows utilities to manage the use, reliability, and efficiency of their electrical grid effectively.  [Durel Decl. ¶ 4.]  GE's development work on Grid IQ began in 2011 in Atlanta.  [*Id.*]  GE's business concerning Grid IQ—including the research, design, development, marketing, sales, financial reporting, and product support for Grid IQ—is based in Atlanta.  [*Id.* ¶ 5.]  The vast majority of personnel with responsibilities for Grid IQ are based in Atlanta; as such, the vast majority of business records relating to Grid IQ's research, design, development, marketing, sales, financial reporting, and product support are generated by GE personnel in Atlanta.[3]  [*Id.* ¶¶ 5 & 7.]  Source code for software incorporated into Grid IQ was developed in Atlanta by and at the direction of GE personnel located there, and is accessible from GE's Atlanta facilities.  [*Id.* ¶¶ 8 & 10.]  Key physical evidence, specifically testing facilities for the Grid IQ products and services, are located in Atlanta.  [*Id.* ¶ 8.]

---

[2] GEC recently announced that it will be moving its headquarters from Fairfield, Connecticut to Boston, Massachusetts.  [Durel Decl. ¶ 2.]
[3] The remaining GE employees involved in Grid IQ are mostly remote workers located in Illinois, Michigan, Alabama, Virginia, Oregon, Florida, Canada (Montreal), and the United Kingdom.  [Durel Decl. ¶ 5.]  To the extent GE personnel outside of Atlanta generate business records relating to Grid IQ's research, design, development, marketing, sales, financial reporting, or product support, those records are electronically accessible to the Atlanta headquarters of the Grid IQ business.  [*Id.* ¶ 7.]

GE employees in Atlanta have primary responsibility for Grid IQ research, design, development, marketing, sales, financial reporting, and product support.  [Durel Decl. ¶ 7-12.] These employees include:

- Anthony Durel, the Product Line Leader of Software-as-a-Service (SaaS) Offerings at Grid Solutions who has knowledge of Grid IQ research, design, development, marketing, sales, and product support;

- Tim Rush, a Senior Engineering Manager at Grid Solutions who has knowledge of the research, design, and development of Grid IQ, including additional software development work performed by Lawrenceville, Georgia-based third-party contractor SUM Global Technology ("SUM Global")[4]; and

- Erick Jensen, a Senior Financial Planning & Analysis Analyst at Grid Solutions, who has knowledge of Grid IQ financial records, including its revenues, costs, and profits.

[*Id.* ¶ 16-18.]  GE believes that information from these employees will bear on at least the issues of non-infringement and damages.  GE also anticipates that these employees are likely to serve as witnesses in this case.

## 2.     The Patents-in-Suit

The original assignee and previous owner of the Patents-in-Suit, Critical Response Systems, Inc., is located in Norcross, Georgia, in the Northern District of Georgia.  [Chassman Decl., Ex. 1.]  Based upon publicly available information, it appears that both named inventors of the Patents-in-Suit, James M. Dabbs, III and Brian Claise, continue to work for Critical Response

---

[4] SUM Global employees knowledgeable of the structure, function, and operation of certain software components incorporated into Grid IQ are all believed to reside in the Northern District of Georgia.  [Durel Decl. ¶ 9 & 19.]

Systems, as its President and Vice President, respectively.  [*Id.*, Exs. 2-3.]  Also based upon publicly available information, IPinvestments Group, who represented Critical Response Systems in its sale of the Patents-in-Suit to GroupChatter on or about July 22, 2015, is also located in Atlanta.  [*Id.*, Exs. 4-5.]  GE anticipates that these non-parties possess information, including knowledge and documents, regarding at least the conception, reduction to practice, prosecution, chain of title, sale, and licensing of the Patents-in-Suit.

### C.     This Case Lacks a Meaningful Connection to the Eastern District of Texas.

GroupChatter's connection to the Eastern District of Texas is recent and ephemeral. According to publicly available information, an entity formed on or about September 26, 2014 under the name "Monument Tech Eta, LLC" and, on or about July 8, 2015, changed its name to "GroupChatter LLC."[5]  [Chassman Decl., Ex. 6.]  GroupChatter's manager is Monument Patent Holdings, LLC.  [*Id.*]  Monument Patent Holdings is another Texas limited liability company, which was formed on or about December 13, 2013.  [*Id.*, Ex. 7.]  Monument Patent Holdings has four members, three of whose addresses are identified as being outside of this District in Dallas, Texas and Monticello, Illinois.  [*Id.*]  The remaining identified member is Matthew DelGiornio, with an Allen, Texas address.  [*Id.*]

GroupChatter alleges that its headquarters and principal place of business are located at 1400 Preston Road, Suite 475, Plano, Texas 75093—a suite that GroupChatter appears to share with at least thirteen other entities, including Monument Patent Holdings.  [Dkt. 1 ¶ 1; Chassman Decl., Ex. 8.]  GE has been unable to locate any information indicating that either GroupChatter or Monument Patent Holdings makes, sells, or offers any services or products.

---

[5]  Monument Tech Eta's name change to GroupChatter occurred just weeks before GroupChatter's purchase of the Patents-in-Suit on July 22, 2015.  [*Compare* Chassman Decl., Ex. 6 *with id.* Ex. 5.]

Within two months of allegedly purchasing the Patents-in-Suit, on September 22, 2015, GroupChatter filed suit in this District against Sensus USA Inc., asserting infringement of the Patents-in-Suit.  Case No. 15-cv-00863-JRG.  Shortly thereafter, GroupChatter filed additional suits in this District asserting infringement of the Patents-in-Suit by Landis+Gyr Technologies, LLC and Landis+Gyr Technology, Inc. on October 6, 2015, and by Itron, Inc. on October 14, 2015.  Case Nos. 15-cv-00886-JRG and 15-cv-00900-JRG.  Those cases are before Judge Gilstrap.  On November 11, 2015, GroupChatter filed the instant suit against GE, which is assigned to Judge Schroeder.

The accused Grid IQ products have no significant connection to this forum either.  No GE employees knowledgeable of or responsible for the research, design, development, marketing, or sales of Grid IQ are located in Texas.[6]  [Durel Decl. ¶¶ 5-6.]  No GE testing facilities for Grid IQ are located in Texas.  [Id. ¶ 8.]  No Grid IQ customers are located in Texas.[7]  [Id. ¶ 11.]  No supplier of Grid IQ components is located in this District.[8]  [Id. ¶ 12.]

## III.   LEGAL STANDARD

A district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of the parties and witnesses" and "in the interests of justice."  28 U.S.C. § 1404(a).  To determine whether a case should be transferred, the court pursues a two-pronged

---

[6] To date, only a single employee with responsibilities for Grid IQ has been based in Texas. [Durel Decl. ¶ 6.] This employee was based in El Paso, Texas, located in the Western District of Texas.  [Id.] That employee no longer has any responsibilities with respect to Grid IQ.  [Id.]

[7] GE has a relationship with AT&T regarding the accused Grid IQ products and services.  [Durel Decl. ¶ 13.]  GE is not aware of any GE or AT&T employees located in this District with information relevant to this relationship. [Id. ¶ 5 &14.]

[8] GE contracted with third-party Consert to supply certain hardware and software components for a single Grid IQ deployment for a single Grid IQ customer.  [Durel Decl. ¶ 12.]  At the time of the negotiations with Consert for this deployment, Grid IQ personnel in Atlanta were primarily negotiating with Consert's employees in North Carolina—where Consert was based previously. [Id.]  Consert is now located in the Western District of Texas.  [Id.]

inquiry.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (directing Eastern District of Texas to transfer).

The court first determines whether the case originally could have been brought in the proposed transferee district.  *Id.*  A patent infringement action may be brought "where the defendant resides, or where the defendant has [allegedly] committed acts of infringement and has a regular and established place of business."  28 U.S.C. 1400(b).

If the threshold inquiry is met, the court then weighs the relative convenience of the transferee district and the transferor district, based on a number of private and public interest factors.  *See, e.g.*, *Gonzales v. Autotrader.com, Inc.*, No. 14-cv-00630, 2015 WL 1387858, at *1 (E.D. Tex. Mar. 25, 2015) (granting motion to transfer to Northern District of Georgia).  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Volkswagen*, 545 F.3d at 315.  The public interest factors are:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law.  *Id.*

"Typically, the most important of the above factors is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer."  *Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007).  The plaintiff's choice of forum, however, is entitled to no weight in determining whether to transfer venue.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319-20 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating

the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis.").  This is particularly true where a plaintiff's contacts with a forum are recent and ephemeral, "which are nothing more than a construct for litigation."  *See, e.g.*, *Network Protection Scis., LLC v. Juniper Networks, Inc.*, No. 10-cv-00224, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) (citing *In re Microsoft Corporation*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010)).

"[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  Thus, even though "[t]he analysis may not show that the transferee forum is far more convenient[,] that is not what is required.  With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is 'clearly more convenient.'"  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

IV.    **ARGUMENT**

    A.    **GroupChatter's Claims Could Have Been Brought in the Northern District of Georgia.**

This case meets the threshold requirement for transfer to the Northern District of Georgia. The principal places of business of both GE Energy and Grid Solutions is in Atlanta, Georgia, located within the Northern District of Georgia, and all Defendants, including GE Energy's and Grid Solutions' parent company GEC, are subject to personal jurisdiction in Georgia.  [Durel Decl. ¶¶ 2-3.]

**B.     The Private Interest Factors Favor Transfer to the Northern District of Georgia.**

**1.     The Relative Ease of Access to Sources of Proof Favors Transfer.**

In patent cases, "the bulk of relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Accessibility to sources of proof is an important private interest factor that weighs heavily in favor of transfer.  *Id.*  "The critical inquiry 'is relative ease of access, not absolute ease of access.'"  *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013) (citations omitted).

Virtually all witnesses and key physical evidence relating to Grid IQ are located in the Northern District of Georgia, strongly favoring transfer to that district.[9]  These witnesses include GE employees primarily responsible for Grid IQ's research, design, development, marketing, sales, financial reporting, and product support.[10]  [Durel Decl. ¶¶ 7-12.]  These witnesses likely have information pertaining to these issues and are expected to testify in this case at least with respect to the issues of non-infringement and damages.  The Northern District of Georgia is the location of key physical evidence relevant to these issues, specifically, testing facilities for Grid IQ products and services.  [*Id.* ¶ 8.]  The ability to test the Grid IQ products and services is relevant to GroupChatter's allegations of infringement.  Moreover, third-party contractor SUM

---

[9] That GE's documentation may be accessible in locations outside the Northern District of Georgia does not alter the balance against transfer.  [Durel Decl. ¶ 7.]  This is particularly true where, as here, key physical evidence relevant to the issue of non-infringement—the testing facilities for Grid IQ products and services—are located in Atlanta.  *See, e.g.*, *Toa*, 543 F. App'x at 1008-09 (noting that existence of physical sources of proof in transferee forum outweighed the fact that documentation was stored electronically and available outside transferee forum).

[10] The fact that some personnel with involvement with Grid IQ are located outside the Northern District of Georgia (*see* Durel Decl. ¶ 5) does not weigh against transfer.  *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 10-cv-00364, 2012 WL 506669, at *4 (E.D. Tex. Feb. 15, 2012) ("That there may be some relevant sources of proof spread outside of the Northern District of California does not rebut the Defendants' showing that the Northern District of California is a clearly more convenient forum.").

Global, whose Greater-Atlanta based employees performed additional software development work on Grid IQ, is located also located in the Northern District of Georgia.  [*Id.* ¶¶ 9 & 19.] SUM Global's employees may have information relevant to the issue of non-infringement.  [*Id.*]

The Northern District of Georgia also appears to be the locale for virtually all of the non-party witnesses and physical evidence relating to the conception, reduction to practice, prosecution, chain of title, sale, and licensing of the Patents-in-Suit.  The named inventors and original assignee of the Patents-in-Suit, Critical Response Systems, are located in the Northern District of Georgia.  [Chassman Decl., Exs. 1-3.]  So, too, is IPinvestments, the Atlanta-based entity that coordinated the sale of the Patents-in-Suit from Critical Response Systems to GroupChatter just months before this case was filed.  [*Id.*, Exs. 4-6.]

Here, no significant amount of relevant evidence is located in the Eastern District of Texas.  GroupChatter's alleged headquarters shares office space with numerous other entities. GroupChatter's formation shortly before it filed this case was designed for no other purpose than to manipulate venue, and "is a classic case where the plaintiff is attempting to game the system" in anticipation of litigation.  *Zimmer*, 609 F.3d at 1381-82 (directing Eastern District of Texas to transfer).  GroupChatter's scant ties to this District contrast starkly with the presence of numerous individuals and entities in the Northern District of Georgia with knowledge and information concerning accused product functionality and patent validity issues.  *Toyota*, 747 F.3d at 1340 (directing Eastern District of Texas to transfer).  "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation."  *Microsoft*, 630 F.3d at 1364 (Fed. Cir. 2011) (ordering transfer where plaintiff incorporated under Texas laws and opened an office in Tyler shortly before filing suit).  Accordingly, the first private interest factor strongly favors transfer.

**2.      The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Favors Transfer.**

"The fact that the transferee venue is a venue with usable subpoena power [] weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345.  The non-party named inventors, the original assignee of the Patents-in-Suit, and the entity who coordinated their sale to GroupChatter are all located in the Northern District of Georgia and subject to process there. [Chassman Decl., Exs. 1-5.]  Their testimony may be necessary for GE's invalidity defense, damages, and, potentially, other issues.  SUM Global employees knowledgeable regarding software development for Grid IQ are also located in the Georgia district.  [Durel Decl. ¶¶ 9 & 19.]  Testimony from these non-parties may be necessary for GE's non-infringement defenses at trial.  Those witnesses are not subject to compulsory process for trial here.  As such, the second private interest factor favors transfer.

**3.      The Cost of Attendance for Willing Witnesses Strongly Favors Transfer.**

A transfer to the Northern District of Georgia would substantially reduce the cost and burden of attendance for both party and non-party witnesses.  "The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343; *see also Nintendo*, 589 F.3d at 1198-99 (weighing the travel burden and disruption to work and family for those who must attend trial).

Here, the party and non-party witnesses overwhelmingly reside in the Northern District of Georgia.[11]   GE's expected witnesses regarding Grid IQ's research, design, development,

---

[11] Insofar as there may be potential witnesses with knowledge concerning Grid IQ in Richmond, Birmingham, and Chicago (*see* Durel Decl. ¶¶ 9 & 11), each of these locations is hundreds of miles closer to the Northern District of Georgia than this District.  [Chassman Decl., Exs. 9-14.] *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 779 (E.D.

marketing, sales, financial reporting, and product support reside in the Northern District of Georgia.  [Durel Decl. ¶¶ 16-18.]  Potentially knowledgeable employees of third-party contractor SUM Global are also based in the Northern District of Georgia.  [*Id.* ¶ 19.]  Even if there are likely and willing witnesses for whom this District is more convenient—and GE is not presently aware of any such witnesses—any convenience to them would be outweighed greatly by the substantial convenience to the witnesses located in the Northern District of Georgia.  [Chassman Decl., Ex. 15.]  *See Ingeniador, LLC v. Adobe Sys. Inc.*, No. 12-cv-00805, 2014 WL 105106, at *3-*4 (E.D. Tex. Jan. 10, 2014) ("[G]iven that most witnesses will come from California, [the inconvenience to a few witnesses closer to the Eastern District of Texas] is outweighed by the substantially increased convenience of witnesses in California.")

It is undisputed that the named inventors, the previous owner of the Patents-in-Suit, and the entity who coordinated the sale of the Patents-in-Suit to GroupChatter located in the Northern District of Georgia will have to travel a substantial distance—over 600 miles—to testify at trial if this case is not transferred.  [Chassman Decl., Ex. 15.]  The third private interest factor also strongly favors transfer.

### 4.    The Other Practical Factors Are Neutral.

The final private interest considerations are the practical problems related to the ease, expense, and expediency of trial.  These problems "include those that are rationally based on judicial economy."  *DSS Tech. Management, Inc. v. Apple, Inc.*, No. 13-cv-00919, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 17, 2014).  Although the existence of duplicative suits in different jurisdictions may have practical implications that weigh in favor of or against transfer, GroupChatter's decision to file numerous suits in this District concerning the same patents

---

Tex. 2009) (finding cost of travel for witnesses residing closer to proposed transferee district than Eastern District of Texas favored transfer).

cannot overcome an otherwise strong argument for transfer. *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (directing Eastern District of Texas to transfer case even though this District had previously construed claims of the asserted patent).

Moreover, because those suits are assigned to Judge Gilstrap, it is far from certain that they will be consolidated with this case.[12]  Thus, even if this case is not transferred, multiple courts will handle litigation involving the Patents-in-Suit.  And, even if the pending lawsuits could be consolidated, any potential benefits of consolidation would not overcome the weight of the other factors that clearly favor transfer of this case to the Northern District of Georgia. *See Blue Spike, LLC v. 3M Cogent, Inc.*, No. 12-cv-00499, 2014 WL 10005586, at *6 (E.D. Tex. July 11, 2014) (granting motion to transfer even though there were multiple additional cases pending and consolidated in this District).  This last private interest factor is therefore neutral.

### C.  The Public Interest Factors Favor Transfer to the Northern District of Georgia.

#### 1.  The Northern District of Georgia Has a Substantial Connection to and Local Interest in Adjudicating this Case.

In patent cases, the locale where the alleged infringing systems were designed and developed should be considered to have a "significant interest" in the controversy. *See, e.g.*, *Toa*, 543 F. App'x at 1010.  Here, the Northern District of Georgia has a significant interest in this dispute because (1) GE Energy, Grid Solutions, and most of the likely witnesses reside in that district; (2) the research, design, and development of Grid IQ occurred there; (3) the named inventors, the previous patent owner, and the entity who coordinated the sale of the Patents-in-

---

[12] Judge Gilstrap has recused himself from other matters involving GE. *See, e.g.*, *Marshall Feature Recognition, LLC v. Gen. Elec. Co.*, No. 15-cv-01427 at Dkt. 9 (Sept. 9, 2015); *Rothschild Connected Devices Innovations, LLC v. Gen. Elec. Co.*, No. 15-cv-00161 at Dkt. 3 (Feb. 13, 2015); *Olivistar, LLC v. Gen. Elec. Co.*, No. 14-cv-00399 at Dkt. 6 (Apr. 25, 2014); *Light Transformation Techs. LLC v. Gen. Elec. Co.*, No. 12-cv-00827 at Dkt. 10 (Feb. 25, 2013).

Suit are also located there; and (4) GroupChatter's allegations call into question the work and reputation of several individuals residing or conducting business in that community. *See, e.g.*, *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transferee district's local interest strong because case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community").

In contrast, the Eastern District of Texas has no meaningful connection to this dispute. No GE employees with relevant knowledge or known non-party witnesses reside in this District. [Durel Decl. ¶ 5.]   Nor do any Grid IQ customers.   [*Id.* ¶ 11.]   GroupChatter's litigation-manufactured presence in this District does not outweigh the Northern District of Georgia's clear local interest in adjudicating this dispute.  *See Microsoft*, 630 F.3d at 1364 (rejecting that the court must honor "connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *see also Software Rights Archive, LLC v. Google, Inc.*, No. 07-cv-00511, 2010 U.S. Dist. LEXIS 73972, at *16 (E.D. Tex. July 22, 2011) ("Establishing a principal place of business in this district shortly before filing suit does not create a local interest.").   Thus, this public interest factor favors transfer.

> ### 2.      The Administrative Difficulties Flowing From Court Congestion in the Eastern District of Texas Favors Transfer.

Court congestion and administrative issues in this District favors transfer.   The Eastern District of Texas has an extraordinary and steadily increasing number of patent cases pending on its docket.   Last year alone, 2,545 patent cases were filed in the Eastern District of Texas, in contrast to only 64 patent cases filed in the Northern District of Georgia.   [Chassman Decl., Ex. 16.]

While the time to trial in the Northern District of Georgia (29.8 months) is slightly longer than the Eastern District of Texas (22.9 months), this is does not alter the balance against

transfer.  [Chassman Decl., Ex. 17 at 1-2.]  Where "several relevant factors weigh in favor and others are neutral, then the speed of the transferee district court should not alone outweigh all of the other factors."  *See Genentech*, 566 F.3d at 1347.  Moreover, where, as here, the plaintiff does not make, sell, or offer any products or services, courts do not regard "the prospective speed with which this case might be brought to trial to be of much particular significance."  *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (because plaintiff did not make or sell any product that practices the claimed invention, it was "not in need of a quick resolution of this case").  This public interest factor also favors transfer.

### 3.    The Remaining Public Interest Factors Do Not Bear on Transfer.

The remaining public interest factors are neutral because federal patent law will apply to this case and both the Eastern District of Texas and the Northern District are capable of adjudicating patent claims.

## V.    CONCLUSION

For at least the foregoing reasons, Defendants respectfully request that the Court transfer this case to the Northern District of Georgia.

Dated:  January 29, 2016                          Respectfully submitted,

By:  */s/ Peter J. Chassman*
Peter J. Chassman
State Bar Number: 00787233
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX  77002-6110
Telephone: (713) 469-3885
Facsimile:  (713) 469-3899
pchassman@reedsmith.com

*Attorney for Defendants*
*General Electric Company, GE Energy*
*Management Services, LLC, and GE Grid*
*Solutions, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 29, 2016.


*/s/ Peter J. Chassman*
Peter J. Chassman

## **CERTIFICATE OF CONFERENCE**

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h) for this Motion.  Counsel for Defendants, Peter J. Chassman and Brian D. Roche, met and conferred with counsel for Plaintiff, Cabrach J. Connor, Jennifer Tatum Lee, and Jason Dietz, via telephone on January 28, 2016 concerning the subject of the present motion.  The conference , concluded with Plaintiff's counsel requesting an additional day to respond to Defendants' request that Plaintiff consent to transfer of this case to the United States District Court for the Northern District of Georgia.  On January 29, 2016, Messrs. Connor and Roche further met and conferred by telephone.  During that conference, Mr. Connor indicated that Plaintiff would oppose this motion.  As a result, the meet and confer process has resulted in impasse with regard to the present motion

*/s/ Peter J. Chassman*
Peter J. Chassman