IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GROUPCHATTER, LLC, | CIVIL ACTION FILE |
| Plaintiff, | |
| v. | |
| GENERAL ELECTRIC COMPANY, GE ENERGY MANAGEMENT SERVICES, INC., and GE GRID SOLUTIONS, LLC, | NO. 1:16-cv-00486-WSD [LEAD CASE] |
| and | |
| LANDIS+GYR TECHNOLOGIES, LLC and LANDIS+GYR TECHNOLOGY, INC., | NO. 1:16-cv-00711-WSD |
| and | |
| ITRON, INC. | NO. 1:16-cv-01800-WSD |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO THE LANDIS+GYR AND GENERAL ELECTRIC DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER CONSOLIDATING CASES FOR TRIAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION .....................................................................................................1

STATEMENT OF FACTS .........................................................................................2

LEGAL STANDARD ................................................................................................6

    I.   Motion for Reconsideration Standard ...............................................................6

    II.  Joinder and Consolidation Standards ...............................................................8

    III. The Court Did Not Abuse its Discretion in Ordering Consolidation. .............9

        A. GroupChatter has Asserted Joint Infringement. ...........................................9

        B. Co-Defendants Provide Components for the Same Accused Products or Processes. ..................................................................................................10

        C. The Court Has the Inherent Power to Manage its Docket and May Deny Defendants' Motion Without Prejudice. ....................................................13

CONCLUSION ........................................................................................................14

## TABLE OF AUTHORITIES

**Cases** .................................................................................................................. Page(s)

*Bayer Pharma AG v. Macleods Pharm., Ltd.*, C.A. No. 15-464
  (GMS), C.A. No. 15-832 (GMS), 2016 WL 1450771 (D. Del.
  April 12, 2016) ..................................................................................................... 13

*Bryan v. Murphy*, 246 F. Supp. 2d 1256 (N.D. Ga 2003) ...................................... 6, 7

*In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012) ............................................... 9, 13

*MSPBO, LLC v. Adidas N.A., Inc.*, Civil Action No. 13-cv-02287-
  PAB-KMT, 2014 WL 349102 (D. Colo. Jan. 30, 2014) .................................... 13

*Omega Patents, LLC v. Skypatrol, LLC*, No. 1:11-cv-24201-KMM,
  2012 WL 2339320 (S.D. Fla. June 19, 2012) ..................................................... 12

*Paper Recycling, Inc. v. Amoco Oil Co.*, 856 F. Supp. 671 (N.D. Ga.
  1993) ..................................................................................................................... 7

*Shockley v. Arcan*, 248 F.3d 1349 (Fed. Cir. 2001) ................................................ 10

*Tessera, Inc. v. Advanced Micro Devices, Inc. and Qualcomm, Inc.*,
  No. C 05-04063-CW, No. C 12-692 CW, 2013 WL 6073889 (N.D.
  Cal. Nov. 13, 2013) ............................................................................................. 14

*Whitesell Corp. v. Electrolux Home Prods., Inc.*, No. CV 103-050,
  2010 WL 4025943 (S.D. Ga. Oct. 13, 2010) ........................................................ 7

**Statutes**

35 U.S.C. § 299 ....................................................................................... 1, 8, 9, 10, 12, 13

35 U.S.C. § 299 (a)(1) ............................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 20 ................................................................... 1, 8, 9

Federal Rule of Civil Procedure 21 ........................................................................8, 9

Federal Rule of Civil Procedure 42 ..................................................................1, 8, 9

LR 7.2(e), NDGa..............................................................................................................6

## INTRODUCTION

Consolidating the General Electric Company, GE Energy Management Services, Inc., GE Grid Solutions, LLC (collectively "GE") and Landis+Gyr Technologies, LLC, Landis+Gyr Technology, Inc. (collectively "L+G") cases for trial is efficient and appropriate under Fed. R. Civ. P. 42(a), Rule 20, and 35 U.S.C. § 299.  GroupChatter alleges, and Defendants do not dispute, that GE and L+G provide integrated AMI solutions (automated metering infrastructure a.k.a. "smart grid" systems).  Such integrated systems are accused instrumentalities in the consolidated action, and Defendants' concerted efforts constitute joint infringement.

Common questions of fact will arise at trial.  In addition to showing how the L+G/GE systems infringe, GroupChatter intends to present evidence showing how GE and L+G together guided efforts to standardize certain aspects of AMI systems to ensure interoperability.  Some of these standards relate directly to how the AMI systems perform group messaging, and Co-Defendants' mutual compliance with them evidences infringement.

If Defendants had addressed their burden, they would have had to acknowledge it is heavy.  Presumably, they also would have stated a recognized basis for reconsideration.  Left to infer Defendants' position, GroupChatter submits

that no clear error of law or fact warrants reconsideration or further action by the Court. The present record supports consolidation for trial.

## STATEMENT OF FACTS

GroupChatter contends that L+G and GE infringe the same four patents (the 7,969,959 ("'959 Patent"); 8,199,740 ("'740 Patent"); 8,588,207 ("'207 Patent"); and 9,014,659 ("'659 Patent")) and substantially all of the same claims of those patents. After L+G supplemented its pleadings to assert a declaratory judgment claim against GroupChatter relating to the recently issued '888 Patent (U.S. Patent No. 9,294,888), GroupChatter asserted a counterclaim against L+G for infringement of the '888. GE has not sought to add the '888 Patent in this case, and GroupChatter has not asserted the '888 Patent against GE.

In general terms, the asserted patent claims relate to two-way deterministic group messaging. GroupChatter's infringement contentions focus on how L+G/GE AMI systems communicate with large numbers of endpoints, which are most commonly smart utility meters found near residential electrical service connections. The way L+G and GE infringe the asserted claims is strikingly similar, and that is no coincidence.

Both L+G and GE comply with the same ANSI standards that they worked together to develop. The excerpt below is from a 2012 publication of the

SmartGrid/AEIC AMI Interoperability Standard Guidelines.  On its face, it states, "This document should be used by all compliant Utility enterprise head-end systems, billing systems, interfaces to the metering network, all the way down to the meters and End Devices." GC006170.  Both L+G and GE had representatives on the AEIC Working Team that authored the Guidelines.

### SmartGrid/AEIC AMI Interoperability Standard Guidelines for ANSI C12.19 / IEEE 1377 / MC12.19 End Device Communications and Supporting Enterprise Devices, Networks and Related Accessories

Version 2.1
Approved May 02, 2012
Published July 26, 2012

AEIC Guidelines, v2.1
AEIC/SmartGrid AMI Interoperability Standard Guidelines for ANSI C12.19 Communications

#### Participants

Chair: Young Nguyen, Pacific Gas & Electric
Vice Chair: Anthony Hawkins, CPS Energy
Secretary: Shannon Spizzirri, Southern California Edison
Editors: Terry Penn, Georgia Power Company & Shannon Spizzirri, Southern California Edison

At the time this document was completed, the AEIC Working Team had the following membership:

| First | Last | Company | First | Last | Company |
|---|---|---|---|---|---|
| Michael | Anderson | Landis+Gyr | Tim | Morgan | Duke Energy |
| Larry | Barto | Georgia Power Company | Young | Nguyen | Pacific Gas & Electric |
| Ed | Beroset | Elster Electricity, LLC | Dan | Nordell | Xcel Energy |
| Brent | Cain | Itron | Tony | Osmanski | PPL Electric Utilities Corp. |
| Dan | Gunderson | Minnesota Power | Terry | Penn | Georgia Power Company |
| Anthony | Hawkins | CPS Energy | Derl | Rhoades | Alabama Power Company |
| David | Jirikovic | Consumers Energy | Greg | Sheran | Southern California Edison |
| Larry | Kotewa | CNT Energy | Shannon | Spizzirri | Southern California Edison |
| Ed | May | Itron | Kostas | Tolios | DTE Energy |
| Bill | Mazza | Sensus | Richard | Tucker | Tucker Engineering |
| Mike | Miller | Itron | James | Tucker | SDG&E |
| Avygdor | Moise | Future DOS R&D, Inc. | Ginger | Zinkowski | GE |

On July 20, 2016, GroupChatter served its LPR 4.1 infringement contentions and identified two ANSI standards (C12.22 and C12.19) in its L+G and GE infringement contentions and in many instances made the same specific contentions as to both.  For example, GroupChatter contends that GE and L+G comply with ANSI C12.22.  In its '959 LPR 4.1 Infringement Claim Chart (at page 92 for L+G and page 100 for GE), GroupChatter stated the same contention to show that the Co-Defendants' compliance with the standard shows the endpoints respond to group messages:  "ANSI C12.22 requires a response from endpoints that are Accused Instrumentalities."

GroupChatter expects to present evidence that L+G/GE AMI systems meet or perform certain claim elements or steps in order to comply with interoperability standards.  L+G and GE both comply with ANSI C12.19, and the standard concerns storage of group addresses, which is a requirement of some asserted claims.  Proof at trial will have substantial evidentiary overlap.

GE and L+G provide integrated AMI solutions too.  As to these, GroupChatter contends GE and L+G are joint infringers with joint and several liability.  GroupChatter contends and expects to present evidence at trial that GE and L+G provided AMI system components for integration on the same AMI system.  Indeed, publicly available information GroupChatter produced with its

LPR 4.1 disclosures and included in its amended complaint against GE (Doc. 74 at ¶ 59) identifies GE endpoints (in this case electric meters) as "factory integrated" with L+G Gridstream AMI technologies:

**Commercial & Industrial Electricity Metering**

**AMI Integrations**
Factory integrated AMI communication options for kV2c/kV2c+

GE's kV2c and kV2c+ meters are integrated with a wide variety of AMI communication modules. GE is constantly seeking to provide diverse solutions suitable for each customer's AMI needs. The following table summarizes current factory installed communication options.

| AMI Technologies | Type | kV2c 120-480V | kV2c 120-480V EPS | kV2c+ 120-480V | kV2c+ 600V |
|---|---|---|---|---|---|
| Aclara® (UMT-C) | PLC | X | | | |
| Itron (53ESS ERT®) | RF (AMR), 900 MHz | X | | X | X |
| L+G Gridstream® (TS1/TS2) | PLC | X | | | |
| L+G Gridstream (Command Center) | RF Mesh, 900MHz | | X | | |
| L+G Gridstream (UtiliNet Solution Center) | RF Mesh, 900MHz | X | | | |
| Sensus (FlexNet®) | RF (Tower-based) | X | | | X |
| Silver Spring Networks® (NIC) | RF Mesh, 900 MHz | | X | | |
| Trilliant CDMA (CellReader®) | Cellular | | X | | |
| Trilliant GPRS (CellReader) | Cellular | | | X | X |
| Trilliant (SecureMesh™) | RF Mesh, 2.4 GHz | | X | | |

GroupChatter identified smart meter endpoints such as these GE/L+G "factory integrated" units as accused instrumentalities. In its motion, Co-Defendants do not assert that no such units have been deployed. GroupChatter expects to present evidence at trial of the Co-Defendants' collaboration on specific AMI systems such as the Norcross, Georgia project for which GE "partnered" with Landis+Gyr subsidiary, Consert. GroupChatter specifically referred to this partnership in its LPR 4.1 infringement contentions ("Accused Instrumentalities

include deployments operated or built with partners (e.g., Silver Spring Networks, Consert . . .)" and cited GE's statement that, "Consert and 3G are part of our go-to-market strategy."  L+G bought Consert in 2013.

Turning to validity, Co-Defendants invoke the same factual and legal challenges to GroupChatter's patents.  In their answers, Co-Defendants make the same allegations that the asserted claims are invalid or unenforceable under 35 U.S.C. §§ 101, 102, 103, and/or 112.  *See* Doc. 42 (L+G's Answer at Fifth, Sixth, Seventh, and Eighth Defenses) and Doc. 12 (GE's Answer at Third Defense).  The same factual record will be at issue here because L+G and GE challenge the same patent claims.  While there exists the potential for different assertions of prior art, Co-Defendants have yet to identify any and cite to no factual distinctions between their validity challenges.

Other common issues of fact include the ownership of the patents, activities of the inventors, and the importance of deterministic group messaging functionality and the benefits it delivers in AMI systems.

**LEGAL STANDARD**

**I.      Motion for Reconsideration Standard**

Under Local Rule 7.2(E), "[m]otions for reconsideration shall not be filed as a matter of routine practice."  LR 7.2(e), NDGa. (2001); *see also Bryan v. Murphy*,

246 F. Supp. 2d 1256, 1258 (N.D. Ga 2003).  "As indicated by the language of this rule, motions for reconsideration are not to be filed as a matter of course, but only when 'absolutely necessary."  *Id.*  (citing *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F.Supp. 1557 (N.D. Ga. 1995) (O'Kelly, J.)).  Reconsideration is only "absolutely necessary" where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  *Id.* (citing *Jersawitz v. People TV*, 71 F. Supp. 2d 1330 (N.D. Ga.1999) (Moye, J.); and *Paper Recycling, Inc. v. Amoco Oil Co.*, 856 F. Supp. 671, 678 (N.D. Ga. 1993 (Hall, J.)).

"Parties may not use a motion for reconsideration as an opportunity to show the court how it 'could have done it better.'" *Id.* at 1259 (citing *Pres. Endangered Areas of Cobb's History, Inc.*, 916 F. Supp. at 1560).  "In fact, a court's reconsideration of an earlier order is an extraordinary remedy, which should be granted sparingly." *Whitesell Corp. v. Electrolux Home Prods., Inc.*, No. CV 103-050, 2010 WL 4025943, at *7 (S.D. Ga. Oct. 13, 2010) (citing *Region 8 Forest Servs. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805-06 (11th Cir. 1993)).

Although Co-Defendants avoid reference to the standard for reconsideration and fail to state the legal basis for their motion, it appears from their argument that

they contend that the Court made a clear error of law or fact and does not enjoy discretion to consolidate these actions for trial and manage its docket. They are wrong.

## II. Joinder and Consolidation Standards

Federal Rule of Civil Procedure 21 provides that "the court may at any time, on just terms, add or drop a party."

Federal Rule of Civil Procedure 20(2) allows defendants to be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Federal Rule of Civil Procedure 42(a) provides with respect to consolidated trials that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

Particular to patent cases is the joinder statute, 35 U.S.C. § 299, which provides that "accused infringers may be joined in one action as defendants . . . or have their actions consolidated for trial, only if—(1) any right to relief is asserted

against the parties jointly, severally, or in the alternative with respect to or arising out of the same transactions, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and (2) questions of fact common to all defendants or counterclaim defendants will arise in the action."

In *In re EMC Corp.*, the Federal Circuit, on mandamus, examined a motion to sever and joinder under Federal Rule of Civil Procedure 21, 20 and 42. 677 F.3d 1351, 1354-60 (Fed.Cir. 2012). The Federal Circuit held that the same transaction or occurrence test requires a "logical relationship" between the claims. *Id*. at 1357–58 (citations omitted). "The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *Id.* at 1358. "Any allegedly infringing acts must share an aggregate of operative facts in order to be properly joined." *Id.*

### III.  The Court Did Not Abuse its Discretion in Ordering Consolidation.

#### A. GroupChatter has Asserted Joint Infringement.

Co-Defendants ignore the first part of 35 U.S.C. § 299 that provides for consolidation for trial if "any right to relief is asserted against the parties ***jointly***, severally . . . and questions of fact common to all defendants . . . will arise in the action." (emphasis added).

GE and L+G are not always competitors. They provide integrated products such as the GE KV2C smart electric meter with Landis+Gyr Gridstream technology built in. Endpoint devices and their communication modules satisfy elements of the asserted claims and perform steps of claimed methods. As a result, GroupChatter has asserted in its infringement contentions and its complaint that GE/L+G integrations "constitute joint infringement of the asserted claims." *See* Doc. 65, Ex. A at 9; Ex. B at 8.

Under a joint infringement theory or as supplier/reseller, GE and L+G are jointly and severally liable as joint tortfeasors for their infringing integrated AMI components and systems. *Shockley v. Arcan*, 248 F.3d 1349, 1364 (Fed. Cir. 2001). Section 299 is satisfied.

### B. Co-Defendants Provide Components for the Same Accused Products or Processes.

Consolidation is appropriate under the second section of 35 U.S.C. § 299 (a)(1) too. This section provides an alternative to joint and several liability for infringing acts relating to the "same accused product or process." Co-Defendants assert that consolidation was not warranted under this section because "different and competing accused systems are at issue." Doc. 65 at page 2. But as we saw above, co-Defendants make, sell, offer for sale, and use the accused Gridstream and Grid IQ systems *together*. In other words, Co-Defendants' system

components are not only compatible with each other; Defendants market and promote their systems as "integrat[ed]."

AMI systems are complex two-way communication networks with tens of thousands (or even millions) of endpoints. The asserted claims cover the architecture and deterministic group messaging functionality of these systems, and GroupChatter's infringement contentions identify many different components and how they satisfy aspects of the claims.

For years, the AMI industry has been moving toward interoperability, which is why GE and L+G sent representatives to participate in the standards-setting process. They need their voice heard so their AMI technologies are reflected in the standards. In turn, they will be able to market component products for integration in AMI systems.

The GE smart meter integration chart demonstrates this trend. It shows, for example, a GE KV2C smart meter (accused in this case) designed specifically to work with the L+G Command Center (the operation software for the Gridstream system—also accused in this case). AMI systems that include these integrated products and are used to perform deterministic group messaging constitute a single accused instrumentality. L+G/GE are liable to GroupChatter for infringement

based upon the same accused product or process. Consolidation is proper under the alternative provision of Section 299.

In addition to making and using the accused AMI systems, Co-Defendants' infringe by selling and offering to sell their respective interchangeable components. Similar to a single suit against a manufacturer and downstream seller or when a defendant sells an accused product that contains components of the other defendants' accused product, consolidation for trial is proper. *See Omega Patents, LLC v. Skypatrol, LLC*, No. 1:11-cv-24201-KMM, 2012 WL 2339320, at *1-2 (S.D. Fla. June 19, 2012) (holding that patent claims against manufacturer and downstream seller did not warrant severance under 35 U.S.C. § 299 as inherent in the defendants relationship were common questions of fact and defendants actions were different than those in the *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012) case because the defendants manufactured and distributed the same product); *MSPBO, LLC v. Adidas N.A., Inc.*, Civil Action No. 13-cv-02287-PAB-KMT, 2014 WL 349102, at *1 (D. Colo. Jan. 30, 2014) (granting unopposed motion to consolidate two related cases when one defendant's alleged infringing products are composed of infringing protocols and components supplied by other defendant); *see also Bayer Pharma AG v. Macleods Pharm., Ltd.*, C.A. No. 15-464 (GMS), C.A. No. 15-832 (GMS), 2016 WL 1450771, at * 1-2 (D. Del. April 12, 2016)

(consolidating for pretrial and bench trial two separate patent infringement suits against two separate pairs of defendants).

Contrary to Co-Defendants' assertion that "it is unclear at this early stage" whether their integrated products satisfy Section 299, GroupChatter's infringement contentions point out the integrated GE/L+G products and how these smart meters satisfy asserted claim elements and method steps. There is nothing "unclear" about GroupChatter's contention and Co-Defendants identify no information they think is missing. These facts directly satisfy Section 299's "same accused product or process" provision. Indeed, if Co-Defendants could assert that their components or integrated products were never used in an accused AMI system or that they are not at issue in this case for some other reason, it is fair to presume they would have.

**C.     The Court Has the Inherent Power to Manage its Docket and May Deny Defendants' Motion Without Prejudice.**

Taking Co-Defendants at their word that "it is unclear that this early stage whether any [GE and Landis+Gyr] 'integrations" would satisfy Section 299 (despite L+G/GE being the parties that possess such information and documentation), they would suffer no prejudice should the Court deny their motion without prejudice. Co-Defendants agreed these cases should be consolidated for pretrial purposes, and discovery has just started.

GroupChatter has provided its initial infringement contentions asserting joint and indirect infringement against Co-Defendants, and their non-infringement contentions are due next month. GroupChatter expects additional discovery will reveal specific instances of Co-Defendants' collaboration, joint provision of AMI system components, and efforts to integrate their AMI technologies. Should GroupChatter be wrong about that, however, Co-Defendants may move for severance on a developed record (as they claim to want) without suffering any harm. *See Tessera, Inc. v. Advanced Micro Devices, Inc. and Qualcomm, Inc.*, No. C 05-04063-CW, No. C 12-692 CW, 2013 WL 6073889, at *1-3 (N.D. Cal. Nov. 13, 2013) (denying without prejudice defendants' motion for separate trials and finding that claims against four sets of defendants involved similar accused packages and noting that four separate trials would result in duplicative proceedings and burden the parties, the court and potential jurors in the district).

## CONCLUSION

Co-Defendants have not met their heightened burden on reconsideration to show that the Court made a clear error in law or fact. Contrary to their unsupported assertions, the pleadings and contentions in this case reflect GroupChatter's joint and indirect infringement allegations by which GE and L+G are jointly and severally liable for damages. To the extent there is any question

about the overlap between Co-Defendants' products and the factual issues in this case, the motion for reconsideration should be denied without prejudice to revisit the issue should the factual record develop in a way that does not support a single, efficient trial on the merits.

Dated:  August 15, 2016        Respectfully submitted,

           By: /s/*Danie A. Kent*
             Daniel A. Kent
             Georgia Bar Number 415110
             dankent@kentrisley.com
             **KENT & RISLEY LLC**
             555 N Point Ctr E Ste 400
             Alpharetta, GA 30022
             Tel:  (404) 585-4214
             Fax:  (404) 829-2412

             and

             Cabrach J. Connor
             State Bar No. 24036390
             Email:  cconnor@taylordunham.com
             David E. Dunham
             State Bar No. 06227700
             Email:  ddunham@taylordunham.com
             Jennifer Tatum Lee
             Texas Bar No. 24046950
             Email:  jtatum@taylordunham.com
             **TAYLOR DUNHAM AND RODRIGUEZ LLP**
             301 Congress Ave., Suite 1050
             Austin, Texas  78701
             512.473.2257 Telephone
             512.478.4409 Facsimile

             Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to L.R. 7.1.D of the Northern District of Georgia, that the foregoing Plaintiff's Opposed Motion for Leave to File Second Amended Complaint was prepared in 14-point Times New Roman font.

/s/*Daniel A. Kent*
Daniel A. Kent

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 15th day of August, 2016.

/s/*Daniel A. Kent*
Daniel A. Kent